Joseph ROTONDO, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–92–00048–CR.

Court of Appeals of Texas,
El Paso.

July 14, 1993.

John Gates, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for State.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

KOEHLER, Justice.

Joseph Rotondo appeals from a conviction for the offense of murder. Upon a finding of guilt, the jury assessed punishment at confinement for life in prison. We affirm the trial court judgment.

## FACTS

The record reflects that Joseph Rotondo, the Appellant in this cause, killed Todd Tucker on February 25, 1991, by shooting him in the back of the neck with a .38 caliber revolver. Tucker was an organ grinder who made his living by entertaining people at fairs and other public events. Rotondo worked for a carnival. In October of 1990, Rotondo met Tucker at a carnival in Amarillo, Texas, and in mid-February of 1991, the pair traveled together to El Paso in Tucker's motor home in order to work the rodeo.

When the rodeo ended, Tucker and Rotondo remained in El Paso for another week and a half, working at a flea market and on the streets of downtown El Paso, and living in Tucker's motor home. Rotondo testified at his trial, and described how Tucker drank heavily and talked incessantly about his membership in the Ku Klux Klan during that time. He further described how on the night of February 25, he argued with Tucker and threatened to leave because of Tucker's excessive drinking. Rotondo contends that during the argument, Tucker first begged Rotondo not to leave, then put a cocked gun to Rotondo's head and threatened to kill him. Rotondo grabbed the gun and struggled with Tucker, finally shooting Tucker in the head to keep from being killed.

Scared and unable to think clearly, Rotondo drove the motor home out of El Paso through Las Cruces, New Mexico, in the early morning hours of February 26, 1991. At a temporary border checkpoint west of Las Cruces, Border Patrol agents stopped Rotondo and discovered Tucker's dead body in the motor home with a .38 caliber revolver lying nearby. The agents arrested Rotondo and took him to the county jail in Las Cruces. At trial, Rotondo admitted killing Tucker, but claimed he acted in self-defense.

## ANALYSIS

### A. *Admission of Extraneous and Prejudicial Evidence*

■ In his first point of error, Rotondo contends that the trial court erred in admitting speculative and prejudicial extraneous evidence that he engaged in homosexual con-

duct. During the testimony of Dr. James Wahe, the physician who performed Tucker's autopsy, the State offered into evidence rectal swabs taken from Tucker which contained traces of semen. Defense counsel objected that this evidence was prejudicial and had no relevancy to this case. This same issue arose later in the trial when a chemist from the Texas Department of Public Safety described how the swabs tested positive for the presence of semen. The chemist explained that the test results indicated that the semen could have, but did not necessarily, come from Rotondo.

Rotondo now argues that since he admitted to committing the crime and the State did not have a vague or tenuous case with which to work, the State had no need to introduce evidence which implicated him in homosexual conduct. He cites *Koffel v. State*, 710 S.W.2d 796, 801–802 (Tex.App.— Fort Worth 1986, pet. ref'd) for the proposition that it is error to admit evidence of an extraneous offense when the defendant has contested no material element of the charge and the evidence, absent the reprehensible conduct, is sufficient to show the commission of the crime.

The State responds that in order to evaluate the evidence realistically, the jury had a right to hear what occurred immediately prior to and subsequent to Tucker's death. The State cites as an example, *Mann v. State*, 718 S.W.2d 741 (Tex.Crim.App.1986), *cert. denied*, 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987), wherein the State was allowed to bring in evidence that Mann raped and murdered another individual while in the course of murdering the complainant. The Texas Court of Criminal Appeals reasoned that the testimony of the extraneous murder was admissible as part of the context of the charged offense and that the jury had a right to have the charged offense placed in its proper setting. *Mann*, 718 S.W.2d at 741.

In the present cause, Rotondo claims that he acted in self-defense after Tucker attacked him. Rotondo testified that the killing occurred while he was alone with Tucker and, with the exception of approximately ten minutes, the two had spent the entire day in each others' company. Yet the scientific evidence indicates Tucker was sodomized near the time that he was killed. And Tucker was found with his shirt up around his chest, his pants down around his pubic hair, and a contact gunshot wound to the back of his neck. The State argues that not only is the evidence that Rotondo sodomized Tucker near the time of Tucker's death probative, it rebuts Rotondo's theory that he killed in response to Tucker's aggression because it shows that Rotondo was, in fact, the aggressor against Tucker.

We agree with the State that this evidence was relevant and was not more prejudicial than probative. Moreover, we conclude that his evidence is admissible in accordance with Section 19.06(a) of the Texas Penal Code:

> In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX.PENAL CODE ANN. § 19.06(a) (Vernon Supp.1993). Accordingly, we overrule Point of Error No. One.

### B. *Failure to Establish Chain of Custody*

█ In his second point of error, Rotondo contends that the trial court erred in allowing testimony based upon improperly or inconclusively proven evidence. Rotondo refers to the fact that while testifying, the chemist displayed and referred to a vial of blood purportedly taken from Rotondo without the State's first proving up the chain of custody or formally admitting the blood into evidence. When defense counsel objected to the State's use of the vial of blood, the prosecutor answered that the nurse who drew the blood would later take the stand to establish the chain of custody. The trial judge ruled that he would allow the chemist's testimony, "subject to a potential motion to strike at another time, that the chain is not proved."

The record indicates, however, that defense counsel stipulated to the chain of custody at a later point in the trial:

Court: During the break, Mr. Gates, you had an opportunity to look at the blood and the State is going to call Maria Saldana at this time. Is that my understanding?

State: The State would call Maria Saldana.

Defense: Your Honor, I've looked at the sample and seen her name on there. I don't see that there is any necessity. It seems as if the chain of evidence is complete so I'll stipulate that that sample is there, that it was take [sic] by Saldana.

. . . . .

Court: So you withdraw the objection as to the chain of custody on that?

Defense: Yes.

From this exchange, we conclude that defense counsel waived his earlier objection and that this point of error is without merit. We overrule Point of Error No. Two.

## C. Mistrial Due to Loss of Physical Evidence

■ In his third point of error, Rotondo contends that the trial court erred in not granting a mistrial when defense counsel demonstrated that the State had lost or suppressed some of Tucker's personal effects which the defense believed to be exculpatory to Rotondo. Specifically, it came to light during trial that the State no longer had in its possession Tucker's Ku Klux Klan membership card, Klan robe, and other Klan-related documentation. Rotondo argues that this evidence indicated Tucker's active membership in an organization dedicated to the use of brute force and terror and, thus, was relevant and crucial to Rotondo's self-defense claim.

Upon learning that this evidence was unavailable, defense counsel moved for mistrial. The trial judge denied the motion, and later in the trial, defense counsel asked to recall Tucker's father to the witness stand to testify that he had received and destroyed the evidence of Tucker's Klan membership. The State then offered to stipulate that the Klan literature had once existed. Defense counsel accepted that offer and withdrew his request to recall Tucker's father to the stand. We

conclude from our review of the record that in accepting the stipulation, Rotondo received the relief desired.

Moreover, we note that defense counsel introduced abundant evidence regarding Tucker's Klan membership to the jury. Rotondo testified at length about Tucker's ties to the Klan and Tucker's father testified that the El Paso police had given him Tucker's Klan literature. The State did not dispute that Tucker was affiliated with the Klan.

Finally, we note that although Rotondo argues that it was important to his self-defense claim to show that Tucker had a violent character, defense counsel did not tie Tucker's death to his alleged Klan membership. Defense clearly asserted during trial that the argument leading to Tucker's death erupted over Tucker's excessive drinking. The State argues that an affiliation with the Klan, an organization known to be hostile to minorities such as blacks and Jews, had no bearing on Tucker's alleged attack on Rotondo, a Caucasian.

We agree with the State that to introduce the physical evidence of Tucker's Klan membership would have been merely prejudicial with no probative value. Moreover, because evidence of Tucker's Klan membership came to light through testimony and by stipulation, the fact that Tucker's Klan membership card, robe, and literature were not physically present was harmless error. *See* TEX.R.APP.P. 81(b)(2). We overrule Point of Error No. Three.

## D. Characterization of Tucker's Death as Murder

■ In his fourth point of error, Rotondo contends that the trial court erred in allowing a witness to characterize Tucker's death as a murder. Specifically, Border Patrol Agent Thatcher, in relating the sequence of events surrounding Rotondo's arrest, testified:

I called New Mexico State Police. I asked for an ambulance to come out and also for a state police officer or some backup to come out, that we had a murder.

Rotondo argues that characterizing Tucker's death as murder invaded the jury's province

by declaring Rotondo guilty before the jury could deliberate. Rotondo relies upon *Gross v. State,* 730 S.W.2d 104, 106 (Tex.App.—Texarkana 1987, no pet.) for the proposition that a nonexpert's opinions are not admissible if they amount to legal conclusions or if they amount to little more than choosing sides as to how the case should be decided. While we agree with this proposition, we conclude from the record that Thatcher did not form a legal conclusion through his testimony, but rather, simply related the information he had given the state police at the time. We overrule Point of Error No. Four.

### E. *Admission of Irrelevant Evidence*

In his fifth point of error, Rotondo contends that the trial court erred in allowing the State to introduce into evidence the personal effects taken from Rotondo's pockets at the time of arrest. Specifically, the State introduced Rotondo's driver's license, a bus ticket, a piece of paper with an address scribbled on it, and a bank withdrawal slip. Over defense counsel's relevancy objection, the trial judge admitted this evidence subject to the State tying the evidence to the case at a later point. Rotondo now argues that the State never "tied in" this evidence during the remainder of the trial. Rotondo complains that the admission of this nonprobative evidence had a prejudicial impact on the trial, but in no way explains how this evidence harmed him. We can perceive no harm in the admission of this evidence. *See* TEX.R.APP.P. 81(b)(2). We overrule Point of Error No. Five.

We affirm the judgment of the trial court.