Torey BLEDSOE, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–99–00151–CR.

Court of Appeals of Texas, Tyler.

May 31, 2000.

Kenneth Nash, Tyler, for Appellant.

Edward J. Marty, Tyler, for Appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

HADDEN, Justice.

A jury convicted Torey Bledsoe ("Appellant") of aggravated robbery and the trial court assessed his punishment at thirty years' confinement in the Texas Department of Criminal Justice—Institutional Division. In issue one, Appellant complains that the evidence is legally insufficient to sustain his conviction. In issue two, Appellant challenges the factual sufficiency of the evidence to support the jury's verdict. In issue three, Appellant contends that the trial court erred when it gave the jury an "*Allen*" charge. In issue four, Appellant argues that the trial court erred in overruling his motion for mistrial when the jury failed to reach a verdict after "four hours and forty-nine minutes" of deliberations. In issue five, Appellant complains of the introduction of testimony that implied an extraneous offense. We will affirm the trial court's judgment.

## BACKGROUND

Jimmy Burks ("Burks") testified that around 11:30 p.m. on June 10, 1998, he drove to a night depository at a Bank One motor bank in Tyler to deposit his paycheck. As he was completing a deposit slip, an individual reached through the driver's window, placed a gun to his stomach and demanded "the bag." Burks testi-

fied that the assailant was wearing a long, orange-brown wig with no bangs. After Burks informed the assailant that he did not have a "bag," the assailant demanded and took his paycheck and wallet. Burks identified Appellant in open court as the individual who robbed him.

Candace McQueen ("McQueen"), an accomplice witness, testified that on June 10, 1998, she, Bryan Walker and Appellant discussed plans to commit a robbery at the Bank One motor bank. They drove to the bank around 10:00–10:30 p.m. They waited for someone to rob for fifteen to twenty minutes, but when no customers arrived, they left and went to Appellant's house. After thirty to forty-five minutes, they returned to the bank. When a car pulled into the motor bank, Appellant ran up to the driver's side. McQueen testified that she believed Appellant was carrying a gun because of the way Appellant held his shirt as he ran to the car. To avoid being "recognized" by the surveillance camera in the motor bank, he wore a long, honey-blond wig with bangs. When Appellant returned to their car, he had a wallet and a check. The wallet did not contain any money. That same night, Appellant forged Burks' signature on the check and McQueen cashed it using the driver's license they found in Burks' wallet. McQueen testified that she pled guilty to the aggravated robbery in exchange for ten years' deferred adjudication, 180 days in jail and a $1,000.00 fine. She also received immunity from prosecution for any other offense arising out of the aggravated robbery charge. Further, as part of her plea agreement with the State, McQueen agreed to testify against Appellant.

### LEGAL SUFFICIENCY

■ In issue one, Appellant argues that the evidence is legally insufficient to support his conviction because the non-accomplice evidence presented by the State is insufficient to corroborate McQueen's testimony. The standard for reviewing the legal sufficiency of the evi-

dence is whether, after reviewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex.Cr.App.1998), *cert. denied*, 525 U.S. 1108, 119 S.Ct. 878, 142 L.Ed.2d 777 (1999). "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Whitaker*, 977 S.W.2d at 598. An appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported by more than a 'mere modicum' of the evidence." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Cr.App.1988).

■ A conviction cannot be had upon the testimony of an accomplice witness unless corroborated by other evidence tending to connect the defendant with the offense. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). The corroboration is not sufficient if it merely shows the commission of the offense. *Id.* In considering whether the corroboration is sufficient, we must view the corroborating evidence in the light most favorable to the jury's verdict. *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Cr.App.1994); *Utsey v. State*, 921 S.W.2d 451, 453 (Tex.App.—Texarkana 1996, pet. ref'd). No precise rule can be devised as to the amount of evidence that is required to corroborate the testimony of an accomplice witness. *Id.* Each case must be analyzed on its own facts and circumstances. *Gill*, 873 S.W.2d at 48; *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Cr.App.1993). All facts and circumstances may be looked to as furnishing the necessary corroboration. *Mitchell v. State*, 650 S.W.2d 801, 807 (Tex.Cr.App.1983).

■ In order to weigh the sufficiency of corroborative evidence, we must "eliminate from consideration the testimony of the accomplice witness and then

examine the testimony of the other witnesses to ascertain if there is evidence which tends to connect the accused with the offense." *Hernandez v. State,* 939 S.W.2d 173, 176 (Tex.Cr.App.1997); *Cockrum v. State,* 758 S.W.2d 577, 581 (Tex.Cr. App.1988). The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses may be sufficient if it tends to connect the accused to the offense. *Reed v. State,* 744 S.W.2d 112, 126 (Tex.Cr.App.1988). It is not necessary that the corroborative evidence directly link the accused to the offense or be sufficient in itself to establish guilt beyond a reasonable doubt. *Id.; see also Hernandez,* 939 S.W.2d at 176. Accordingly, to sufficiently corroborate accomplice testimony, the State must merely present *"some* non-accomplice evidence which tends to connect the appellant to the offense." *Hernandez,* 939 S.W.2d at 176.

The State contends that Burks' testimony not only "tends to connect" Appellant to the crime, it "absolutely connects" Appellant to the crime. Appellant asserts that Burks' testimony lacks the "indicia of reliability" because Burks testified that he picked someone other than Appellant out of a pre-trial photographic array shown to him by a police officer. However, Burks also testified that he picked Appellant's picture out of a different photographic array. Greg Roberts, the police officer who showed Burks these photographs, testified that on July 24, 1998, he showed only one array to Burks and that Burks positively identified Appellant as the perpetrator. Thus, Roberts' testimony indicates that Burks may have been mistaken when he testified that he selected someone other than Appellant out of a photographic array. As indicated above, Burks also identified Appellant as the robber in court. He testified that he got a "good look" at the person who robbed him. Despite Burks' testimony that he selected someone other than Appellant out of a photographic array, his testimony as a whole tends to connect Appellant to the offense. Accord-

ingly, we conclude that such non-accomplice evidence sufficiently corroborated McQueen's testimony. We also conclude that the evidence is legally sufficient to support Appellant's conviction. Issue one is overruled.

## FACTUAL SUFFICIENCY

In issue two, Appellant challenges the factual sufficiency of the evidence to support the verdict. When reviewing the factual sufficiency of the evidence, we review all of the evidence, but not in the light most favorable to the prosecution. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Cr.App.1997). We set aside the verdict only if it so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Cr.App.1996). In conducting our analysis, our duty is to examine the trier of fact's weighing of the evidence. *Scott v. State,* 934 S.W.2d 396, 398 (Tex.App.—Dallas 1996, no pet.). We consider all the evidence in the record related to an appellant's sufficiency challenge, comparing the weight of the evidence that tends to prove guilt with the evidence that tends to disprove it. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Cr.App.1997); *see also Fuentes v. State,* 991 S.W.2d 267, 271 (Tex.Cr.App.1999). Because we consider all of the evidence in conducting a factual sufficiency review, we necessarily consider any reasonable alternative hypothesis raised by the evidence. *Ates v. State,* 21 S.W.3d 384, 391 (Tex. App.—Tyler 2000, no pet.); *Richardson v. State,* 973 S.W.2d 384, 387 (Tex. App.—Dallas 1998, no pet.). However, the mere existence of a reasonable alternative hypothesis does not render the evidence factually insufficient. *Ates,* at 391; *Richardson,* 973 S.W.2d at 387.

■ Because the jury is the sole judge of the facts, we must give deference to jury findings. *Cain*, 958 S.W.2d at 407. What weight to give contradictory testimonial evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor. *Id.* at 408–09. We are not free to reweigh the evidence and set aside a jury verdict merely because we feel that a different result is more reasonable. *Id.* at 407. We cannot reverse the verdict if reasonable minds could differ about the conclusions to be drawn from the evidence. *Richardson*, 973 S.W.2d at 387. We find the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain*, 958 S.W.2d at 407. A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *Id.* at 410. Additionally, a decision is not manifestly unjust merely because the defense has presented a reasonable alternative hypothesis. *See Richardson*, 973 S.W.2d at 387.

■ Appellant argues that the in-court identification of Appellant should be disregarded in our factual sufficiency review because Burks previously identified someone other than Appellant as the robber. Appellant contends that Burks' "earlier mistaken identification produced the in-court identification." Although Appellant argues that we should not consider the in-court identification, Appellant did not file a motion to suppress the in-court identification, nor did he object to Burks' identification of Appellant at trial. Therefore, Appellant has failed to preserve the admissibility of the in-court identification for appellate review. *Garcia v. State*, 595 S.W.2d 538, 543 (Tex.Cr.App.1980); Tex. R.App. P. 33.1(a). Accordingly, we will consider Burks' in-court identification of Appellant in our factual sufficiency review.

■ In essence, Appellant complains that Burks' in-court identification of Appellant was not reliable because he previously identified someone else. However, the fact that Burks may have previously iden-tified someone else as the assailant was merely a factor for the jury to consider in assessing the weight of his testimony. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Cr.App.1978); *Rodgers v. State*, 827 S.W.2d 376, 378 (Tex.App.—Corpus Christi 1992, no pet.). As noted above, Roberts' testimony indicates that Burks may not have selected someone other than Appellant. In addition, it is clear that a month and a half after he was robbed, Burks did, in fact, select Appellant out of a photographic array. Further, having reviewed the record, we conclude that Burks' in-court identification was independent of any pre-trial identification that he made. *Jackson v. State*, 628 S.W.2d 446, 448–49 (Tex.Cr.App.1982); *Bruton v. State*, 921 S.W.2d 531, 534–35 (Tex.App.—Fort Worth 1996, pet. ref'd). Burks testified that the assailant was "maybe a foot" from him when the assailant approached his driver's side window and that the "cab light" in his Isuzu Rodeo was on when the assailant approached. He also testified that the motor bank area was lit with "two lights at the end and one at the back." In addition, he testified that he had a "clear view" of the assailant's face, that he looked the assailant "directly in his face" and that the wig the assailant was wearing did not obscure his face. Further, he testified that he remembered Appellant because this was one of the most frightening experiences of his life. Finally, when asked whether there was any doubt in his mind that Appellant was the person who robbed him, Burks responded, "No." For these reasons, we hold that Burks' in-court identification rested on an independent recollection of his encounter with the assailant and was sufficiently reliable to be properly considered by the jury. *Bruton*, 921 S.W.2d at 534–35; *Love v. State*, 730 S.W.2d 385, 395 (Tex.App.—Fort Worth 1987, no pet.). We also hold that the jury's verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, the evidence is factually sufficient to sup-

port Appellant's conviction for aggravated robbery. Issue two is overruled.

## THE "ALLEN" CHARGE

■ The jury began its deliberations in this case at 9:53 a.m. At 2:42 p.m., the jury sent a note to the trial judge stating: "At this time we are hung on a decision[.]" The trial court proposed that the jury be given an *"Allen"* charge.[1] Appellant objected to the language in "paragraph 3" of the proposed charge. The trial court overruled the objection. Appellant also moved for a mistrial, which the trial court denied. In issue three, Appellant contends that the trial court erred when it returned the jurors to the court room and gave them an *Allen* charge. Appellant argues that after the main jury charge is given, a trial court is prohibited from further charging the jury by article 36.16 of the Texas Code of Criminal Procedure. Article 36.16 provides, in pertinent part:

> After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury or unless the judge shall, in his discretion, permit the introduction of other testimony . . .

TEX.CODE CRIM. PROC. ANN. art. 36.16 (Vernon 1981). Appellant asserts that the jury's note was not a request for additional instruction. Appellant argues, therefore, that none of the exceptions to the prohibition against further jury instructions had been invoked. Initially, we note that Appellant's trial objection did not implicate article 36.16. In other words, Appellant did not argue that the trial court was without authority to further charge the jury. *See Loving v. State*, 947 S.W.2d 615, 619 (Tex.App.—Austin 1997, no pet.) (appellant failed to preserve error on claim that jury had not requested additional instructions because appellant's objection at trial did not implicate article 36.16); *Jackson v. State*, 753 S.W.2d 706, 712 (Tex. App.—San Antonio 1988, no pet.) (same). Instead, Appellant contended that a portion of the proposed charge was improper. Because Appellant's objection at trial does not comport with his complaint on appeal, we conclude that nothing is preserved for our review. TEX.R.APP. P. 33.1(a); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Cr.App. 1986).

■ Furthermore, in our view, a trial court does not violate article 36.16 when it provides a noncoercive *Allen* charge to a jury that has informed the court that it is deadlocked or "hung." *Jones v. State*, 986 S.W.2d 358, 362 (Tex. App.—Beaumont 1999, pet. ref'd).[2] More-

1. An *"Allen"* charge consists of supplemental jury instructions that "urge deadlocked juries to rethink their differences in order to reach a unanimous verdict." *Hollie v. State*, 967 S.W.2d 516, 518 n. 2 (Tex.App.—Fort Worth 1998, pet. ref'd). The name derives from *Allen v. United States*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528, 530–31 (1896) wherein the United States Supreme Court discussed such a charge.

2. To support his position that the trial court erred in giving an *Allen* charge, Appellant relies on *Jackson v. State*, 753 S.W.2d at 712–14 (Tex.App.—San Antonio 1988, pet. ref'd). In *Jackson*, the trial judge gave an *Allen* charge when the jury sent a note to the trial judge which stated: "After four hours we are unable to come to unanimous verdict." The court of appeals held that it was improper for the trial court to give such an instruction because the jury's note was not a request for

anything. However, the court of appeals did not reverse the conviction because, in part, the appellant had failed to preserve the error. *Id.* at 712–13. With due respect to the San Antonio Court of Appeals, we cannot conclude that a trial court errs when it responds to such a note with a non-coercive *Allen* charge. *See Loving v. State*, 947 S.W.2d 615, 619 n. 2 & 620 (Tex.App.—Austin 1997, no pet.) (noting its disagreement with *Jackson* and holding that it is not error to give *Allen* charge even if the jury has not indicated that it is deadlocked or unable to reach a verdict); *Love v. State*, 909 S.W.2d 930, 937 (Tex. App.—El Paso 1995, pet. ref'd) (holding that use of non-coercive *Allen* instruction in court's main charge is not error). However, we are not holding that trial courts should, as a matter of course, provide an *Allen* charge to a jury prior to an indication from the jury, in some form, that it has reached an impasse. *Love*, 909 S.W.2d at 937.

over, even if the trial court erred in giving the *Allen* charge at the point which it did, such error would only be reversible if the charge, on its face, was so improper as to render jury misconduct likely or jury misconduct was demonstrated to have occurred in fact. *Love v. State*, 909 S.W.2d 930, 936 (Tex.App.—El Paso 1995, pet. ref'd); *Davis v. State*, 709 S.W.2d 288, 291 (Tex.App.—Corpus Christi 1986, pet. ref'd). The *Allen* charge given in this case substantially conforms with those approved by the court of criminal appeals and our sister courts of appeals. *See, e.g., Howard v. State*, 941 S.W.2d 102, 123–24 (Tex.Cr.App.1996); *Arrevalo v. State*, 489 S.W.2d 569, 571–72 (Tex.Cr.App.1973); *Hollie v. State*, 967 S.W.2d 516, 522–23 (Tex.App.—Fort Worth 1998, pet. ref'd); *Willis v. State*, 761 S.W.2d 434, 437–38 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). Thus, these instructions did not create a likelihood that jury misconduct would occur. Further, the record does not show that the jury was, in fact, coerced by the trial court's instructions. We note that the jury deliberated for two additional hours after the trial court gave the *Allen* charge. Appellant did not file a motion for new trial alleging jury coercion or misconduct. Based on the foregoing, issue three is overruled.

## MOTION FOR MISTRIAL

■ In issue four, Appellant argues that the trial court abused its discretion when it overruled Appellant's motion for mistrial after the jury informed the court that it was "hung." Appellant asserts that it took two days to present the evidence and the jury deliberated for four hours and forty-nine minutes before sending out the note. According to Appellant, in light of the amount of time it took to present the evidence, the length of time the jury had deliberated before it sent out the note was sufficient to warrant the declaration of a mistrial.

■ A jury may be discharged when it cannot agree on a verdict if both sides agree or, in the discretion of the trial court, "where it has been kept together for such time as to render it altogether improbable that it can agree." TEX.CODE CRIM. PROC. ANN. 36.31 (Vernon 1981). The length of time a jury deliberates rests within the sound discretion of the trial court, and absent an abuse of that discretion, no reversible error is shown. *DeLuna v. State*, 711 S.W.2d 44, 48 (Tex.Cr.App. 1986). As noted above, the jury began deliberations at 9:53 a.m. Thereafter, the trial court excused the jurors for lunch. Although the exact time the jurors were excused is unclear from the record, the trial court informed the jury that it would resume deliberations at 1:00 p.m. The note in question was file-marked at 2:42 p.m. Accordingly, Appellant's contention that the jury deliberated for four hours and forty-nine minutes (9:53 a.m. to 2:42 p.m.) before sending out the note is incorrect. Further, the jury's note informing the trial court that it was "hung" was the first indication that the jury had reached an impasse in its deliberations. Moreover, the note did not indicate that the jurors believed that a verdict could not be reached.

■ In addition, when reviewing for abuse of discretion, we consider the amount of time the jury deliberates in light of the nature of the case and evidence presented. *Patterson v. State*, 598 S.W.2d 265, 268 (Tex. Cr.App. [Panel Op.] 1980). Prior to the note indicating that it was hung, the jury sent four separate notes to the trial court requesting additional information. Two of these notes indicated disagreement among the jurors concerning Burks' testimony about the photographic arrays shown to him and his selection of Appellant from one of them. A transcription of Burks' testimony on this subject was provided to the jury. Although this case did not involve large numbers of witnesses or exhibits, we cannot conclude that the issues were easily resolved. Evidence was presented over the course of two days and the jury deliberated approximately

four hours before Appellant's motion for mistrial. The jury had to assess the credibility of Burks' pre-trial and in-court identifications of Appellant in light of the seemingly conflicting testimony of Burks and Roberts. The jury also had to consider McQueen's credibility, particularly in light of her plea agreement with the State. Based on the foregoing, we hold that it was not "altogether improbable" that the jurors would agree. Therefore, we discern no abuse of discretion in overruling Appellant's motion for mistrial and directing the jurors to continue their deliberations. Issue four is overruled.

## EXTRANEOUS OFFENSE

During the State's direct examination of Roberts, the investigating detective, the following exchange occurred:

Q. Once you identified Torey Bledsoe, what did you do?

A. At that point, I obtained an arrest warrant for aggravated robbery for Mr. Bledsoe's arrest.

Q. And—okay. And after you did that, did you conduct any further investigation into the case?

A. I served the warrant on him at the Smith County jail.

Appellant objected and the trial court instructed the jury to disregard this statement. Appellant also moved for a mistrial, which the trial court denied. In issue five, Appellant argues that the trial court erred in overruling his motion for mistrial. Appellant contends that this testimony was inadmissible under Rule 404(b) of the Texas Rules of Evidence [3] because it informed the jury that the police had apprehended a "habitual" offender. According to Appellant, such testimony enabled the jury to conclude that it was "probably" Appellant who had robbed the complainant because the police only arrest criminals.

Mistrial is an extreme remedy appropriate only when "an objectionable event is so emotionally inflammatory that curative instructions are unlikely to prevent the jury from being unfairly prejudiced against the defendant." *Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Cr.App. 1996). The denial of a motion for mistrial is reviewed under the abuse of discretion standard. *Cano v. State*, 3 S.W.3d 99, 109 (Tex.App.—Corpus Christi 1999, pet. ref'd). "[T]estimony referring or implying extraneous offenses can be rendered harmless by an instruction to disregard by the trial judge, unless it appears the evidence was so clearly calculated to inflame the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex.Cr.App.1992). We cannot conclude that the State solicited Roberts' response. The State merely asked whether he had done any further investigation. Further, Roberts did not elaborate on the reasons for Appellant's incarceration. Moreover, the State did not emphasize this statement to the jury. Appellant asserts that *Kelley v. State*, 807 S.W.2d 810 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd), supports his position that the trial court erred in overruling his motion of mistrial. We disagree because in *Kelley*, the trial court overruled the appellant's objection to testimony referring to an extraneous offense. Here, the trial court instructed the jury to disregard Roberts' statement. For these reasons, we hold that the trial judge's instruction cured any error and the judge did not abuse her discretion in overruling Appellant's motion for mistrial. *Rojas v. State*, 986 S.W.2d 241, 250 (Tex.Cr.App.1998); *Kipp v. State*, 876 S.W.2d 330, 339 (Tex.Cr.App.1994); *Hughes v. State*, 962 S.W.2d 89, 91 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). We overrule issue five.

---

**3. Other Crimes, Wrongs or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith ... TEX.R. EVID. 404.

The judgment of the trial court is *affirmed.*