# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00560-CR

**Christopher Newberry, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
### NO. C-1-CR-14-209349
### HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Christopher Newberry of the misdemeanor offense of driving while intoxicated.[1]  The trial court rendered judgment on the verdict and assessed punishment at 120 days' confinement in the Travis County Jail.  In two points of error on appeal, Newberry asserts that the evidence is insufficient to support his conviction and that the trial court abused its discretion in denying his motion for mistrial.  We will affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on the afternoon of June 9, 2014, three 911 callers reported a possible drunk driver operating his vehicle on and around Mesa Drive in Austin.  An audio recording of the 911 calls was admitted into evidence and played for the jury.  On the

---

[1]  *See* Tex. Penal Code § 49.04.

recording, the first caller, who reported that she was driving behind the vehicle, can be heard explaining that the vehicle had "hit a guardrail" and was "swerving" across traffic lanes. At one point, the caller exclaimed, "Oh God, he's going to kill somebody!" The second caller reported that the vehicle was "crazy driving," "hitting stuff back and forth," and "swerving everywhere." The third caller reported that a jeep had arrived at an assisted living facility, had "completely missed the driveway," and had stopped and parked on the sidewalk to the facility. According to this caller, when she had approached the vehicle, there was no one inside, but someone else had told her that the driver was "out stumbling around."

Austin Police Department officers were subsequently dispatched to the facility. Officer Joe Poswalk testified that when he arrived at the facility, he observed a jeep "clearly parked well onto the sidewalk." Photos of the jeep parked on the sidewalk, which was elevated on a curb, were admitted into evidence. Poswalk recounted that when he and another officer approached the vehicle, they observed an occupant inside, in the driver's seat, asleep. Poswalk testified that the occupant of the vehicle, later identified as Newberry, was "sweaty," "drooling on himself," and "had his keys in his lap." According to Poswalk, Newberry "appear[ed] impaired, like he definitely wasn't all there." Poswalk explained, "His speech was very—you couldn't even make it out. It kind of came and went. Like he'd speak clearly and then he'd kind of mumble. So we had him step out and sit on the curb." When Newberry exited the vehicle, Poswalk added, Newberry had "impaired balance."

Another APD officer, Justin Giddings, testified that when he first spoke with Newberry, he "smelled a faint odor of alcohol" and observed that Newberry's "speech was slurry and kind of mumbled," "his eyes were glassy and watery," and "his pupils were very restricted."

2

Officer Giddings also testified that Newberry denied that he had been drinking alcohol that day and claimed that he was "coming from work" and "headed home." Giddings proceeded to have Newberry perform the standardized field sobriety tests. Giddings testified that after observing Newberry's performance on the tests, a video recording of which was admitted into evidence, he concluded that Newberry had been driving while intoxicated and arrested him for that offense. During a search of the vehicle subsequent to the arrest, Poswalk testified, two open beer cans were found inside the center console, and a small cooler with "three more cold beers inside of it" was also discovered inside the vehicle.

Newberry testified in his defense. Newberry conceded in his testimony that he had been drinking beer on the day in question and admitted that he "was intoxicated" at the time the officers found him, but he claimed that he had not been driving the vehicle, even though he acknowledged that the vehicle belonged to him. Instead, Newberry testified, a co-worker of his named "Juan," whose surname Newberry admittedly did not know, had been driving the vehicle. According to Newberry, he had fallen asleep while Juan was driving, had awakened at some point after the car had parked at the assisted living facility, had noticed that Juan was no longer inside the vehicle, and had moved over to the driver's side of the vehicle, where he fell back to sleep until the officers arrived. When asked to explain why he did not inform the officers that Juan had been driving the vehicle, Newberry claimed that he "didn't want [Juan] getting charged with a DWI."

Based on the above and other evidence, which we discuss in more detail below, the jury found Newberry guilty of committing the offense of driving while intoxicated as charged, and the district court rendered judgment on the verdict and assessed punishment as noted above. This appeal followed.

**ANALYSIS**

**Evidentiary sufficiency**

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place.[2] In his first point of error, Newberry asserts that the evidence is insufficient to prove that he had been operating the vehicle or, if he had been operating it, that he had done so while he was intoxicated.

We review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*.[3] Under this standard, "[w]e view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt."[4] "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses."[5] "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination."[6] "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."[7]

---

[2] *See* Tex. Penal Code § 49.04(a).

[3] 443 U.S. 307, 318-19 (1979).

[4] *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016) (citing *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014)).

[5] *Dobbs*, 434 S.W.3d at 170 (citing *Jackson*, 443 U.S. at 319).

[6] *Id*. (citing *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

[7] *Id*. (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

We first address Newberry's contention that the evidence is insufficient to prove that he had been operating the vehicle. In addition to re-urging the argument he made at trial, that Juan was the driver, Newberry claims that there is "no direct evidence" that he had been driving, because the officers had not observed Newberry driving. However, "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt."[8] Here, the circumstantial evidence supporting the jury's finding that Newberry had been operating the vehicle included Officer Poswalk's testimony that Newberry was found in the driver's seat of the vehicle and that the keys to the vehicle were found in Newberry's lap. Additionally, the evidence tended to show that at the time the officers approached the vehicle, Newberry was the vehicle's only occupant; "Juan" was nowhere to be found. Also, according to Officer Giddings, Newberry had informed him that he was "coming from work" and "headed home." The jury could have reasonably inferred from these statements that Newberry had been driving the vehicle. Moreover, in a video recording of Newberry's interaction with the officers, taken from Giddings's patrol-car dashboard camera, one of the officers can be heard asking Newberry, "How did you end up here?" Newberry responded, "Um, driving?" Although Newberry later told the officers that "somebody drove [him]" to the facility, Newberry's initial statement to the officer was consistent with a finding that Newberry had been driving the vehicle, particularly in light of the other evidence tending to show that Newberry was found alone inside the vehicle, in the driver's seat, when the officers arrived. Also, Officer Poswalk testified that, during the investigation, one of the other officers had contacted a witness who had earlier observed the vehicle on the road and had

---

[8] *Id*. (citing *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013)).

asked the witness to stop by the facility and confirm that the vehicle in the parking lot was the same vehicle that the witness had observed on the road. According to Poswalk, this witness "had already described the suspect to us," and "when [the witness] drove by, he immediately said, 'Yeah, that's him.'" Viewed in the light most favorable to the verdict, this and other evidence supports the jury's finding that Newberry had been operating the vehicle.[9]

We similarly reject Newberry's contention that the evidence is insufficient to support the jury's finding that he was intoxicated at the time he operated the vehicle. Multiple 911 callers had reported observing Newberry's vehicle, and they each reported that the vehicle was being driven in a manner that would support a finding that the driver of the vehicle was intoxicated. One 911 caller reported the vehicle "swerving," "almost hitting the curb," "hitting the guardrail," and "running off the road." Another caller, with reference to the manner of driving, exclaimed that the driver was "going to kill somebody." The third caller reported that the vehicle, while attempting to park at the assisted living facility, had "completely missed the driveway" and had ended up on the sidewalk. Moreover, the officers who had interacted with Newberry provided testimony that would also support a finding that Newberry was intoxicated. According to the officers, these indicators of intoxication included the fact that they had found Newberry asleep, drooling, and sweaty inside the vehicle, that Newberry had slurred speech and glassy eyes, that he had smelled of alcohol, and that he had performed poorly on the field sobriety tests. The officers also testified that open beer cans

---

[9] *See Murray v. State*, 457 S.W.3d 446, 449-50 (Tex. Crim. App. 2015); *see also Priego v. State*, 457 S.W.3d 565, 569-70 (Tex. App.—Texarkana 2015, pet. ref'd); *Barton v. State*, 882 S.W.2d 456, 459-60 (Tex. App.—Dallas 1994, no pet.); *Pope v. State*, 802 S.W.2d 418, 420 (Tex. App.—Austin 1991, no pet.); *Reynolds v. State*, 744 S.W.2d 156, 161 (Tex. App.—Amarillo 1987, pet. ref'd).

and a cooler containing "cold beer" were found in Newberry's vehicle. Although the record reflects that there was a gap of approximately 90 minutes between the time of the first 911 call and the arrival of officers at the assisted living facility, the jury could have reasonably inferred that if Newberry had been intoxicated at the time the officers encountered him, then he had been similarly intoxicated earlier, at the time his vehicle was observed on the roadway, particularly in light of the detailed descriptions of erratic driving that two of the callers reported, as well as Newberry's admission during his testimony that he had been drinking beer earlier that afternoon. Viewed in the light most favorable to the verdict, this and other evidence supports the jury's finding that Newberry had been intoxicated at the time he had operated the motor vehicle.[10]

We conclude that the evidence is sufficient to prove that Newberry committed the offense of driving while intoxicated. We overrule Newberry's first point of error.

**Motion for mistrial**

During the State's cross-examination of Newberry, the prosecutor asked him if, "[s]ince this arrest," he had "been in jail." Newberry answered, "Yes, sir." The prosecutor then asked Newberry, "And that's been on a parole hold, correct?" Newberry responded, "That's been for this." At that point, defense counsel interjected, "Your Honor—," and the trial court asked the parties to approach the bench. Outside the presence of the jury, a lengthy discussion ensued regarding the admissibility of evidence related to Newberry's incarceration and parole status. During

---

[10] *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Priego*, 457 S.W.3d at 570; *McCann v. State*, 433 S.W.3d 642, 649-50 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Scillitani v. State*, 343 S.W.3d 914, 920 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also Thacker v. State*, No. 03-15-00079-CR, 2015 Tex. App. LEXIS 11535, at *13-17 (Tex. App.—Austin Nov. 6, 2015, no pet.) (mem. op., not designated for publication).

that discussion, Newberry moved for a mistrial, which the trial court denied. Instead, the trial court ruled "that the question about him being incarcerated is going to be stricken and I'm going to instruct the jury to disregard that question and answer." When the hearing concluded, the trial court provided the following instruction to the jury: "Ladies and gentlemen of the jury, I'm going to ask that you disregard the last question and response. That would be [the prosecutor's] question and Mr. Newberry's response."[11] The cross-examination of Newberry then resumed. In his second point of error, Newberry asserts that the trial court abused its discretion in denying his motion for mistrial.

Initially, we observe that although Newberry's motion for mistrial originally encompassed the disclosure of both Newberry's incarceration and his parole status, Newberry subsequently withdrew his objection to evidence related to his parole status.[12] Accordingly, the only issue that was preserved below is whether the trial court abused its discretion in failing to grant a mistrial based on the disclosure of the fact that Newberry was in jail at the time of trial.[13]

---

[11] The "last" question and response was not the initial question asking Newberry if he was in jail. Instead, it was the follow-up question asking Newberry if he was in jail "on a parole hold." However, Newberry did not object to the trial court's instruction or request any clarification from the trial court.

[12] This was confirmed by the trial court during the bench conference, when it asked counsel, "So, specifically, your objection, then, is only as to the fact that he is currently incarcerated?" Counsel responded, "Yes."

[13] *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) ("[T]he point of error on appeal must comport with the objection made at trial."); *Cole v. State*, 194 S.W.3d 538, 545 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("When a defendant creates the impression that he is abandoning his objection, his initial objection is insufficient to preserve the error for appeal."); *see also Salazar v. State*, 38 S.W.3d 141, 148 n.3 (Tex. Crim. App. 2001) (declining to address issue regarding jury misconduct when initial objections to alleged misconduct were withdrawn); *Rotondo v. State*, 860 S.W.2d 575, 578 (Tex. App.—El Paso 1993, no pet.) (concluding that appellant waived any error regarding admissibility of evidence by withdrawing his objection).

We review a trial court's ruling on a motion for mistrial for an abuse of discretion.[14] We will uphold the trial court's ruling if it is within the zone of reasonable disagreement.[15] "A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile."[16] Accordingly, a mistrial is an appropriate remedy only in "extreme circumstances" for "a narrow class of highly prejudicial and incurable errors."[17] "Whether an error requires a mistrial must be determined by the particular facts of the case."[18]

"The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard."[19] This is true even when the improper question is answered by the witness.[20] "A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors."[21] Additionally, "[t]hough requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not

---

[14] *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).

[15] *Id*.

[16] *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)).

[17] *Id*. (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)).

[18] *Id*. (citing *Ladd*, 3 S.W.3d at 567).

[19] *Ladd*, 3 S.W.3d at 567.

[20] *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).

[21] *Ladd*, 3 S.W.3d at 567.

first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative."[22]

A defendant has a right to a presumption of innocence, and, as a general rule, disclosing to the jury that the defendant is incarcerated violates that right.[23] However, Texas courts have repeatedly held that testimony disclosing that a defendant is incarcerated can be cured by the less drastic remedy of an instruction to disregard.[24] Consistent with this precedent, the trial court here, at the time it denied the motion for mistrial, ruled that it would instead instruct the jury to disregard the question and response referring to Newberry's incarceration.[25] On this record, we

---

[22] *Ocon*, 284 S.W.3d at 885 (citing *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004)).

[23] *See Estelle v. Williams*, 425 U.S. 501, 503-04 (1976); *Randle v. State*, 826 S.W.2d 943, 944-45 (Tex. Crim. App. 1992); *Pierce v. State*, 234 S.W.3d 265, 268 (Tex. App.—Waco 2007, pet. ref'd).

[24] *See, e.g.*, *Hollaway v. State*, 446 S.W.3d 847, 855-56 (Tex. App.—Texarkana 2014, no pet.); *Pierce*, 234 S.W.3d at 268; *Sharper v. State*, 22 S.W.3d 557, 558-59 (Tex. App.—Texarkana 2000, no pet.); *Bledsoe v. State*, 21 S.W.3d 615, 624 (Tex. App.—Tyler 2000, no pet.); *see also Butler v. State*, No. 14-11-01001-CR, 2012 Tex. App. LEXIS 8132, at *4-7 (Tex. App.—Houston [14th Dist.] Sept. 27, 2012, no pet.) (mem. op., not designated for publication); *Hamilton v. State*, No. 14-08-00175-CR, 2010 Tex. App. LEXIS 480, at *4-8 (Tex. App.—Houston [14th Dist.] Jan. 28, 2010, no pet.) (mem. op., not designated for publication); *Madden v. State*, No. 02-08-00007-CR, 2009 Tex. App. LEXIS 7084, at *9-10 (Tex. App.—Fort Worth Sept. 3, 2009, pet. ref'd) (mem. op., not designated for publication).

[25] For purposes of this appeal, it is of no consequence that the trial court's instruction might have been incomplete by referring only to the "last" question and response but not the initial question and response in which Newberry's incarceration was first disclosed. It was Newberry's responsibility to ensure that the instruction to disregard was adequate. *See Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987); *see also Archie*, 221 S.W.3d at 702 (Keller, P.J., concurring) ("If the defendant was entitled to a better instruction, he should have requested it."). To the extent that the instruction here might have been inadequate, Newberry failed to object to it or seek clarification. Nor did Newberry re-urge his motion for mistrial at a later time. In reviewing the ruling on a motion for mistrial, we "must review the trial court's ruling in light of the arguments that were before the

cannot conclude that the trial court abused its discretion when it denied the motion for mistrial and instead opted for a less drastic alternative that would have cured any error.[26]

We overrule Newberry's second point of error.

## CONCLUSION

We affirm the judgment of conviction.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   July 27, 2016

Do Not Publish

---

trial court at the time it ruled." _Wead v. State_, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). Although Newberry is now arguing that the instruction to disregard was ineffective because it referred only to the "last" question and response, no such argument was made to the trial court below.

[26] _See Ocon_, 284 S.W.3d at 887-88; _Wood_, 18 S.W.3d at 648; _Hollaway_, 446 S.W.3d at 856; _Pierce_, 234 S.W.3d at 268; _Sharper_, 22 S.W.3d at 558-59; _Bledsoe_, 21 S.W.3d at 624; _see also Stivers v. State_, No. 02-14-00060-CR, 2016 Tex. App. LEXIS 4193, at *32-37 (Tex. App.—Fort Worth Apr. 21, 2016, no pet. h.) (mem. op., not designated for publication); _Rice v. State_, No. 03-07-00446-CR, 2009 Tex. App. LEXIS 2062, at *14-16 (Tex. App.—Austin Mar. 26, 2009, no pet.) (mem. op., not designated for publication).