

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00255-CR

LARRY PAUL HOLLAWAY, A/K/A LARRY PAUL HOLLOWAY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 13-F0144-102

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

# O P I N I O N

Steven Hollaway and his brother, Larry Paul Hollaway,[1] had spent an evening together in Steven's mobile home, visiting one another as they listened to music and drank alcohol. During the evening, Steven and Hollaway had left the home to stock back up on beer and left their drinks unattended. After this night of frivolity, Steven went to bed with his long-time companion, Na'Tasha Seim, and their one-year-old daughter while Hollaway bedded down elsewhere in the dwelling. Steven and Seim were awakened by Hollaway's attack on them with a large kitchen knife. Steven was stabbed numerous times, and Seim was stabbed once. Seim, carrying the couple's daughter, crawled out of the mobile home through a window and ran to a neighbor's house for help. While Seim survived her injury, Steven later died in an ambulance in route to the hospital.

Hollaway was charged with the murder of Steven and first degree felony aggravated assault of Seim.[2] Hollaway pled not guilty and argued that the attack was not premeditated, but was the result of involuntary intoxication resulting from his drink having been spiked with some unknown substance placed in it by Seim while Hollaway and Steven were absent from the residence. The jury found Hollaway guilty on both charges.[3] On the murder charge, he was

---

[1]The record also indicates his name as "Holloway." To avoid confusion between Larry and Steven, we will refer to appellant as "Hollaway."

[2]The charge of aggravated assault was elevated to the level of a first degree felony due to the charge's allegations that Hollaway used a deadly weapon and caused serious bodily injury to Seim, who was alleged to be Steven's common-law wife.

[3]In a consolidated trial, Hollaway was also convicted of murder. Hollaway has likewise appealed his conviction in that case. This appeal is the subject of a separate opinion in this Court's cause number 06-13-00254-CR issued of even date herewith.

assessed life imprisonment, and on the aggravated assault charge, he was sentenced to sixty years' confinement with the sentences to run concurrently.

On appeal, Hollaway contends that (1) there was insufficient evidence to show that Seim was Steven's common-law wife; (2) there was insufficient evidence to show that Seim suffered serious bodily injury;[4] (3) the trial court abused its discretion by excusing a juror; (4) the jury's verdict supported only a second degree felony conviction; (5) he was incorrectly assessed a first degree felony range of punishment rather than the appropriate second degree felony range of punishment; (6) the trial court erred by failing to grant a mistrial; and (7) the trial court erred in excluding testimony regarding a pretrial statement made by Seim.

Because its resolution is partially dispositive of other issues, we first address Hollaway's second point of error.

## I.      Was the Evidence Sufficient to Show Serious Bodily Injury?

Hollaway was convicted of aggravated assault with serious bodily injury–family violence, a first degree felony.  Therefore, when being instructed regarding the issue of punishment, the jury was given the punishment range prescribed for a first degree felony.  *See* TEX. PENAL CODE ANN. § 22.02(b)(1) (West 2011).  The offense, as alleged in the indictment, requires the State to prove (among other things) that Seim, the victim, suffered a serious bodily injury.  *See* TEX. PENAL CODE ANN. § 22.02(a)(1) (West 2011).  In his second point of error, Hollaway contends that there was insufficient evidence to show that Seim suffered serious bodily injury from Hollaway's attack.

---

[4]The first two points amount to challenges on two of the elements that must be proven to raise the alleged attack to the level of a first degree felony:  (1) the seriousness of the injury and (2) the identity of the victim.

3

In evaluating legal sufficiency of the evidence, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Seim suffered a serious bodily injury as a result of the stabbing. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). In our examination, we defer to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

"Serious bodily injury" is bodily injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2014). "[T]here are no wounds that constitute 'serious bodily injury'" per se. *Jackson v. State*, 399 S.W.3d 285, 292 (Tex. App.—Waco 2013, no pet.) (quoting *Hernandez v. State*, 946 S.W.2d

4

108, 111 (Tex. App.—El Paso 1997, no pet.)). Serious bodily injury may be established without a physician's testimony when the injury and its effects are obvious. *See Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd); *see Carter v. State*, 678 S.W.2d 155, 157 (Tex. App.—Beaumont 1984, no pet.). The person who sustained the injury at issue is qualified to express an opinion about the seriousness of that injury. *See Hart v. State*, 581 S.W.2d 675, 677 (Tex. Crim. App. [Panel Op.] 1979); *Jackson*, 399 S.W.3d at 292.

Here, Hollaway disputes neither that the attack occurred nor that Seim suffered a stab wound. Rather, he argues that the evidence fails to establish that the wound Seim suffered constituted a serious bodily injury. The evidence established that Seim was stabbed once in the right lower abdomen, and Seim testified that after the stabbing, she suffered pain and dizziness. Officer Danny French, observing Seim's injury on the night of the attack, characterized it as a severe laceration. French noted that Seim was actively bleeding and had blood on her abdomen, pants, and shirt as well as the towel she was holding against the wound. However, the medical records and a photograph of the wound, taken on the night of the incident, show the wound to have been rather small—less than an inch wide. Although paramedic Aaron Latham testified that a stabbing is considered a very serious type of injury, he was not in a position to know the kind of weapon used in the stabbing, the depth of the wound that was inflicted, or whether the stabbing caused any internal injuries. Latham was made aware that Seim claimed to suffer from hemophilia, and Latham explained that a hemophiliac's blood fails to clot in the same way the blood of a person unaffected by the disease clots; rather, he indicated that a hemophiliac's blood

5

clots only slowly, if it clots at all. Latham testified that because Seim was a hemophiliac, a stab wound was capable of causing her death.

Hollaway introduced Seim's medical records into evidence. The records contain the following notable summaries:

> Ms. Seim was seen in the emergency room sustained a single stab wound to her upper abdomen and had some discomfort. CT scan failed to reveal any free fluid or evidence of intra-abdominal injury. She was admitted for observation and as she had some tenderness and during the course of her hospitalization within few hours, she decided to leave against medical advice. She signed out and will follow up with her primary care physician. I will see her on a p.r.n. basis.
>
> . . . .
>
> Isolated stab wound to the right upper quadrant without evidence of intra-abdominal injury. Given this, we will repeat CBC and chest x-ray in 2 hours if this is unchanged. It would be okay to go home, we will now check on her tetanus status and provide this if necessary.

While at the hospital, Seim required no stitches or sutures to close the wound. A few hours after her arrival there, Seim left the hospital (albeit against medical advice because the hospital personnel wanted to observe her for a longer time) because she wanted to get back home to be with her children.

The State contends that the evidence shows that Seim's stab wound created a substantial risk of death. We disagree. While Latham testified that stab wounds were treated as a very serious, life threatening injury, he was speaking in general, hypothetical terms because he did not know if Seim suffered internal injuries or other complications. He neither testified that Seim's actual injury was life threatening, nor did he testify that her hemophilia made her actual injury particularly serious. To the contrary, her medical records show that she suffered neither internal

6

injuries nor bleeding complications arising from her hemophilia. Her wound did not require stitches, and although she left the hospital (against medical advice) only hours after treatment, there is no evidence that she suffered any ill effects from having done so.

Even viewing the evidence in the light most favorable to the jury, we find the evidence legally insufficient to show that Seim suffered a serious bodily injury; accordingly, we sustain this point of error. Proceeding further, we observe that aggravated assault rises to the level of a first degree felony only if "the actor uses a deadly weapon during the commission of the assault and *causes serious bodily injury* to a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code." TEX. PENAL CODE ANN. § 22.02(b)(1) (emphasis added). Having found insufficient evidence of a serious bodily injury, the evidence only supports a conviction and punishment range for a second degree felony. *See* TEX. PENAL CODE ANN. § 22.02(b) (West 2011). Accordingly, we modify the judgment to reflect that Hollaway was convicted of a second degree felony aggravated assault and remand the case to the trial court for a new punishment hearing.

Our ruling on Hollaway's second point of error renders his first, fourth, and fifth points of error moot.

## II.    Dismissal of Empaneled Juror Who Expressed Fear of Retaliation

After voir dire was completed and the jury was seated and sworn, the court dismissed the jury for the day. The following morning, one of the jurors notified the bailiff that she believed she could not serve on the jury. The trial court questioned her in the presence of counsel,

7

excused her sua sponte, and seated the alternate juror. In his third point of error, Hollaway argues that the trial court erred by dismissing the juror.

A trial court may discharge a juror from duty who suffers from a serious disability. *See* TEX. CODE CRIM. PROC. ANN. art. 36.29 (West Supp. 2014); *Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990) (per curiam). A "disability" as used in Article 36.29 includes, "'any condition that inhibits [the] juror from fully and fairly performing the functions of a juror.'" *Reyes v. State*, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (quoting *Griffin v. State*, 486 S.W.2d 948, 951 (Tex. Crim. App. 1972)); *Hill v. State*, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002) (defining disability as "'a physical illness, mental condition, or emotional state'" that prevents juror from fully and fairly performing her duties) (quoting *Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990) (per curiam)); *see Carrillo v. State*, 597 S.W.2d 769, 770–71 (Tex. Crim. App. [Panel Op.] 1980). The decision to excuse a juror, once the jury has been empaneled and sworn, is reviewed under an abuse-of-discretion standard. *Routier v. State*, 112 S.W.3d 554, 588 (Tex. Crim. App. 2003); *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999).

In this instance, the following exchange between the concerned empaneled juror and the trial court occurred immediately before the presentation of evidence:

> THE COURT: Ms. Henderson, come around here for me, if you would. Counsel, if y'all would approach the bench real quick. Ms. Henderson, I was notified by the bailiff this morning that you had contacted him by phone this morning and said you just didn't think you could do this?
>
> JUROR HENDERSON: Right. Yeah, I mean, I've worked myself up over it, and I couldn't sleep last night. And I'm nervous, nauseous, and I can't -- and I work at a prison, and I just don't think that I'm able to. I'm afraid of if I did find this man guilty, a hit or something being put out on me and my family. Like I said, I work in a prison. So I see how all that happens, and I just can't.

THE COURT: Let me tell you, I think the baseline question is, at this time, it's not whether or not you can be fair. I think you can be fair, but the law, the punishment range in this case is anywhere from probation to prison. And if you tell me you just absolutely can't consider the full range of the punishment, you can't follow the law, and I can excuse you. So is that what you're telling me?

JUROR HENDERSON: Yes, sir. I'm sorry.

THE COURT: Will, any questions?

[DEFENSE COUNSEL]: Just so we can get a little better understanding. What's changed between -- during jury selection --

JUROR HENDERSON: Well, then, I mean, then I thought mentally I could, but I cannot. I'm just not sure I can mentally do it, I don't guess.

[DEFENSE COUNSEL]: When you say you're not strong enough mentally, does that mean that you couldn't follow the law and reach a decision because of your feelings on the case?

JUROR HENDERSON: Well, I just don't think that I would be able to find him guilty. I mean, even hearing what I hear, I just don't think I could, and then give out a reasonable punishment.

[THE STATE]: So you're saying that even if you felt that he was guilty beyond a reasonable doubt, because you work at a prison, and you're afraid of retaliation --

JUROR HENDERSON: Yes.

[THE STATE]: -- you would not find him guilty? You would not follow the law?

JUROR HENDERSON: Right.

[THE STATE]: Okay.

THE COURT: Will?

[DEFENSE COUNSEL]: I don't have any further questions, Your Honor.

9

THE COURT:  Any problem me excusing her and moving the alternate up to the jury?

[DEFENSE COUNSEL]:  Your Honor, I mean, we'd like to keep this juror, obviously, based on her answers.  I do understand the Court.  You know, I mean, I'm not going to make the motion to excuse her, and we would like --

THE COURT:  No.  I understand that, but she's told me on the direct questions, she's told the State under direct questions that she can't follow the law of the State of Texas, and she can't sit.  So, Ms. Henderson, I'm going to excuse you at this time.

Fear of retaliation can render a juror disabled under Article 36.29 of the Texas Code of Criminal Procedure when that fear impacts upon the juror's mental condition or emotional state to such a degree as to inhibit "the juror from 'fully and fairly' performing his functions as a juror." *Reyes v. State*, 30 S.W.3d, 409, 412 (Tex. Crim. App. 2000).  In *Reyes*, after the jury was sworn and the State had presented several witnesses, a juror approached the trial judge during a recess and informed her that he believed he knew the defendant and others in the courtroom and that he worked in the same area of town where the defendant lived.  *Reyes v. State*, 49 S.W.3d 552, 554 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).  He testified that he could not follow his oath as a juror or "give a verdict in the case because of fear for his personal safety." *Id*. at 554.  The trial court observed, in part, that

"[t]here is no doubt in my mind, that because of his knowledge of the defendant . . . that he was emotionally distraught, highly concerned for his own personal safety, concerned as to whether or not he would be forced to violate his conscience and not render a proper verdict because he was concerned about future ramifications and would not be able to fulfill his oath that he took as a juror this morning."

*Id.*

10

Here, the juror testified that she worked in the prison system and feared that she or her family would suffer retaliation should she find Hollaway guilty. While the fears expressed by the juror here are more general and indirect than those expressed by the juror in *Reyes*, we find that the trial court acted within its discretion to dismiss the juror based on her expressed fear of retaliation. Accordingly, we overrule this point of error.

## III. Refusal to Grant Mistrial

During the testimony of Bowie County Sheriff's Department Investigator Todd Aultman, the State posed a question to Aultman as follows, "Okay. I figured it up. As far as I can tell, Mr. Hollaway, Larry Hollaway, has been charged with this crime and has been in custody for 263 days. During the 263 days, has anybody contacted you and told you that Larry Hollaway acted --"

Hollaway objected to the question and moved for a mistrial, arguing that the question was a "violation of fair trial and due process" and that no instruction would cure the error. The trial court sustained the objection, instructed the jury to disregard the question, and denied Hollaway's motion to declare a mistrial. In his sixth point of error, Hollaway contends that the trial court erred by failing to grant his motion for a mistrial.

"A trial court's denial of a mistrial is reviewed under an abuse of discretion standard and must be upheld if within the zone of reasonable disagreement." *Brooks v. State*, 420 S.W.3d 337, 340 (Tex. App.—Texarkana 2014, no pet.) (citing *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010)). "'Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.'" *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007)

11

(quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). In other words, we must determine whether the given instruction to disregard could not cure the prejudice from the State's improper question.

In determining whether the trial court abused its discretion in denying a motion for a mistrial, we consider the following factors: "(1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed)." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (citing *Martinez v. State*, 17 S.W.3d 677, 693–94 (Tex. Crim. App. 2000)).

Here, the offense occurred February 23, 2013, and the trial commenced November 13, 2013. Hollaway argues that by noting that he had been in jail for 263 days, the State's question essentially told the jury that Hollaway had been in jail since the time of the offense, which he characterizes as and this was a "severe interference" with his presumption of innocence.

After Hollaway's objection and motion for a mistrial, the trial court removed the jury, listened to brief arguments, and then recessed. After about forty-five minutes, the court reconvened, outside the jury's presence, and arguments continued until the trial court granted Hollaway's objection and denied his motion for a mistrial. The jury was brought back into the courtroom, and the court instructed the jury to disregard the State's question as follows:

> THE COURT: All right. Everyone please be seated. Ladies and gentlemen, right before I took you out, there was a reference made in a question from the prosecution as to the defendant being in continuous custody. I'd like to give y'all a jury instruction at this time. So if y'all would, please pay careful attention.

12

> You are instructed to disregard the prosecutor's last question. What the attorneys say is not evidence. The fact that a person has been arrested, confined, indicted for or otherwise charged with the offense gives no inference to his guilt at this trial. Everybody understand the instruction?

Asking an improper question, alone, will rarely require a mistrial because, in most cases, any harm can be cured by an instruction to disregard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *Sharper v. State*, 22 S.W.3d 557, 558–59 (Tex. App.—Texarkana 2000, no pet.). Here, the trial court instructed the jury to disregard the State's question, and we ordinarily presume that a jury follows cautionary instructions from the trial court. *See Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011).

Hollaway argues that his defense of involuntary intoxication depended entirely on his credibility, and the State's question interfered with the credibility he sought to establish. However, the trial court instructed the jury to disregard the State's improper comment, and considering the brutal nature of the crime and the substantial evidence of guilt, including Hollaway's recorded confession, we are unable to say the trial court abused its discretion in refusing to grant a mistrial. Therefore, we overrule this point of error.

## IV.    Exclusion of Seim's Out-of-Court Statement

A toxicology report established that shortly after the stabbing occurred, Hollaway's blood-alcohol level was in excess of 0.24, over three times the blood-alcohol level with which the driver of an automobile is presumptively deemed intoxicated. On direct examination, Hollaway attempted to elicit testimony from Julie Rodamaker, the aunt of Steven and Hollaway, that Seim had told her after the incident that the police's toxicology report on Hollaway came back negative for drugs or alcohol. The State objected, arguing that the statement was hearsay

13

and was inadmissible because Seim was available to testify. Hollaway argued that the statement was not hearsay because it was not being offered for the truth of the matter asserted. After a hearing outside the presence of the jury, the trial court sustained the State's objection.

In his seventh point of error, Hollaway argues that the trial court erred by excluding Rodamaker's testimony regarding Seim's statement. We review the trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. Under that standard of review, we will not disturb the trial court's ruling if it lies within the "zone of reasonable disagreement." *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007).

Generally, hearsay is not admissible except as provided by statute or one of the exceptions listed in the Texas Rules of Evidence. TEX. R. EVID. 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d); *see also* TEX. R. EVID. 801(c). A statement not offered to prove the truth of the matter asserted is not hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347–48 (Tex. Crim. App. 1995).

During the hearing outside the presence of the jury, the following colloquy occurred between Hollaway and Rodamaker:

> Q. (BY MR. WILLIAMS) Did Na'Tasha make a statement regarding a toxicology screen that the police did on [Hollaway]?
>
> A. Yes.
>
> Q. And what was that statement?
>
> A. She had said that they did a -- the police did a drug and alcohol test on [Hollaway] and that [Hollaway] wouldn't be able to use it to -- as an excuse, you know, for being on drugs or alcohol.

14

> Q.     Did she say it came back negative, like nothing in his system --
>
> A.     Yes.  She did.  She said it came back negative.
>
> Q.     Have you since found out that that statement is absolutely false?
>
> A.     Yes.

Hollaway, who claimed he was not offering the statement in an attempt to show that his toxicology test indicated he had not consumed drugs or alcohol, argued,

> Why this is important, why it's relevant is it goes to show that she was making statements about a tox screen when our case-in-chief is going to show that she put something in [Hollaway's] drink, because she's then actively trying to make people think that there wasn't anything in [Hollaway's] drink.

The trial court sustained the State's objection and excluded the testimony because "it's being offered for the truth of that matter that you're trying to assert . . . . That she lied to [Rodamaker] here about a drug screen."

By Hollaway's admission, both the toxicology report and the testimony of Aultman "plainly show[ed]" that he was intoxicated around the time that he slew his brother.  In addition, Hollaway fully admitted that he was intoxicated; his argument, however, was that he appeared to be so very intoxicated because Seim had surreptitiously slipped some unknown substance in his drink.  Rodamaker's disputed testimony was that Seim had previously told her that Hollaway's toxicology test was negative for drugs and alcohol.  Because the testimony was not being offered for the truth that Hollaway's test was negative for drugs and/or alcohol, then by definition, the statement was not hearsay.  *See* TEX. R. EVID. 801(c), (d); *Dinkins*, 894 S.W.2d at 347–48.

15

Therefore, the trial court erred in sustaining the State's objection and excluding Rodamaker's testimony.

We must now assess for harm the error in excluding the evidence. Generally, errors resulting from the admission or exclusion of evidence are nonconstitutional.[5] *See Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). However, if the precluded evidence forms a vital portion of the defendant's case, the error may be of constitutional magnitude. *Id*.; *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).

> Exclusion of evidence might rise to the level of a constitutional violation if: (1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or (2) a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense.

*Walters*, 247 S.W.3d at 219.

We conclude that this error does not rise to the constitutional level. In *Walters*, the defendant was prohibited from offering a second 9–1–1 recording for the jury to hear. The State offered a recording of the first emergency call and presented a theory that immediately after the shooting, Walters had made no explanation for having shot his own brother, the victim. The jury was not allowed to hear the second emergency call in which Walters said he had shot his brother

---

[5]The type of error determines the harm analysis:

> (a)    *Constitutional Error*.    If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

> (b)    *Other Errors*.    Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

TEX. R. APP. P. 44.2.

in self-defense. *Id.* at 220–21. The Texas Court of Criminal Appeals found that Walters was, nevertheless, able to present his defense through his and other witnesses' testimony, which described the history of animosity between the siblings. *Id.* at 221–22. The court thus found the error to be nonconstitutional. *Id.* at 222; *see also Valle v. State*, 109 S.W.3d 500, 507 (Tex. Crim. App. 2003) ("The fact that appellant was not able to present his case in the form he desired does not amount to constitutional error when he was not prevented from presenting the substance of his defense to the jury.").

Here, although the excluded testimony was important to Hollaway's defensive theory, he was still able to present this defensive evidence without it because he later elicited this admission from Seim by recalling her to the witness stand. We, therefore, evaluate this error as nonconstitutional and evaluate harm based on whether it affected Hollaway's substantial rights.

Nonconstitutional error which does not affect an accused's substantial rights is harmless and must be disregarded. TEX. R. APP. P. 44.2(b). Substantial rights are not affected if we, based on the record as a whole, have a fair assurance that the erroneous exclusion of evidence had either no influence or only a slight influence on the jury. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In making our assessment, we consider everything in the record, the nature of the evidence supporting the verdict, the character of the alleged error, and how it relates to other evidence in the record. *Id.*

In this case, the evidence supporting the verdict is very strong. As evidenced by his confession, Hollaway did not dispute that he stabbed his brother and Seim. He and Seim were the only direct witnesses to the events immediately preceding the stabbing and the stabbing

itself. Evidence was presented that Seim did not like Hollaway and preferred that her husband, Steven, not socialize with him. Hollaway argued that he was involuntarily intoxicated because Seim allegedly put some unidentified substance in his drink without his knowledge. Even though the court erred in excluding Rodmaker's testimony, the harm from the error was blunted to the point of virtual nonexistence when Hollaway called Seim to the stand and she admitted to making the prior statement to Rodamaker. After examining the record as a whole, we find that the court's error had either no influence or only a slight influence on the jury and was, therefore, harmless. Accordingly, we overrule this point of error.

In summary, we modify the judgment to reflect conviction of second degree felony aggravated assault, remand the case to the trial court for a new punishment hearing commensurate with the reduced degree of the crime of conviction, and otherwise affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted: August 13, 2014
Date Decided: October 1, 2014

Publish

18