# NO. 12-18-00216-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TYLER SHANE KENNEDY,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Tyler Shane Kennedy appeals his conviction for aggravated assault on a public servant.  In two issues, Appellant contends the evidence is legally insufficient to support his conviction and the trial court erred in denying his motion for mistrial.  We affirm.

### BACKGROUND

On February 5, 2018, Sean McClanahan and Joshua Cox, deputies with the Smith County Sheriff's Department, went to Appellant's home to arrest him for an outstanding warrant.  When the deputies approached the home, they saw Appellant look through a window before stepping onto the porch.  Deputy Cox approached Appellant and told him that Appellant had a warrant out for his arrest.  Appellant shuffled backward and refused to cooperate.  A struggle ensued between Appellant and the deputies.  During the struggle, Deputy Cox fell into a window and cut his hand on the glass.  After a third deputy arrived, Appellant was restrained and placed under arrest.  Deputy Cox was transported to a hospital where he had surgery on his hand.

Appellant was charged by indictment with aggravated assault on a public servant by intentionally, knowingly, or recklessly causing serious bodily injury to Deputy Cox by struggling against him.  Appellant pleaded "not guilty" and the matter proceeded to a jury trial.  Following evidence and argument, the jury found Appellant "guilty."  At the punishment phase of trial,

Appellant pleaded "not true" to the State's enhancement paragraph. Following evidence and argument, the jury found the enhancement paragraph to be "true" and sentenced Appellant to thirty years imprisonment. This appeal followed.


**SUFFICIENCY OF THE EVIDENCE**

In his first issue, Appellant contends the evidence is insufficient to support his conviction. Specifically, he challenges the jury's finding that he acted intentionally, knowingly, or recklessly.

**Standard of Review**

In Texas, the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 316–17, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See id.*, 443 U.S. at 319, 99 S. Ct. at 2789. The evidence is examined in the light most favorable to the verdict. *Id.* A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982). This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we defer to the factfinder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks*, 323 S.W.3d at 899–900. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient

to establish guilt. ***Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See **Williams v. State***, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." ***Id.***

## Applicable Law

A person commits the first-degree felony offense of aggravated assault on a public servant if he (1) intentionally, knowingly, or recklessly causes serious bodily injury, (2) to a person he knows is a public servant, (3) while the public servant is lawfully discharging an official duty. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(1), (b)(2) (West 2019). A person acts intentionally "with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id*. § 6.03(a) (West 2011). A person acts knowingly "with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist[,]" or if he "is aware that his conduct is reasonably certain to cause the result." *Id*. § 6.03(b).

A person acts recklessly when "with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." ***Id*** § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from an ordinary person's standard of care. ***Id.*** At the heart of reckless conduct is the conscious disregard of the risk created by the actor's conduct. ***Williams v. State***, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007). Mere lack of foresight, stupidity, irresponsibility, thoughtlessness, or ordinary carelessness do not suffice to constitute criminal recklessness. ***Id.*** Rather, recklessness requires the defendant to actually foresee the risk involved and to consciously decide to ignore it. ***Id.*** This combination of an awareness of the magnitude of the risk and the conscious disregard for consequences is crucial. ***Id.*** at 752–53. Whether a defendant's conduct involves "an extreme degree of risk" must

be determined by the conduct itself and not by the resultant harm. *Id*. at 753. "Nor can criminal liability be predicated on every careless act merely because its carelessness results in death or injury to another." *Id*.

Mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978); *Russo v. State*, 228 S.W.3d 779, 793 (Tex. App.–Austin 2007, pet. ref'd). A culpable mental state may be inferred by the trier of fact from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. [Panel Op.] 1982); *Griffith v. State*, 315 S.W.3d 648, 651–52 (Tex. App.–Eastland 2010, pet. ref'd). Whether the actor is aware of the requisite risk is a conclusion to be reached by the trier of fact from all the evidence and the inferences drawn therefrom. *Griffith*, 315 S.W.3d at 652. "The issue is not one of theoretical possibility, but one of whether, given all the circumstances, it is reasonable to infer that the particular individual on trial was in fact aware of the risk." *Dillon*, 574 S.W.2d at 95.

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a) (West 2011). Under Section 6.04(a), a "but for" causal connection must be established between the defendant's conduct and the resulting harm. *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). Two possible combinations exist to satisfy the "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm. *Id*. If the additional cause, other than the defendant's conduct, is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted. *Id*.

**Analysis**

Appellant argues that the evidence is insufficient to demonstrate that he took any action to injure Deputy Cox.[1] He claims that, while a struggle occurred, the State failed to prove that an action taken by Appellant caused Deputy Cox's injury. As a result, he contends the evidence is

---

[1] Appellant does not challenge that Cox was a public servant, that he was lawfully discharging an official duty, or that Cox suffered serious bodily injury.

4

insufficient to show that he intentionally, knowingly, or recklessly caused serious bodily injury to Deputy Cox.

The indictment alleged that Appellant intentionally, knowingly, or recklessly caused serious bodily injury to Cox "by struggling." At trial, Cox testified that Appellant appeared to be looking for an attempt to flee the scene when approached by the officers. Deputy Cox further stated that Appellant was non-compliant and pulled away and tensed up his arms to avoid being handcuffed. During Cox's testimony, his body camera video was admitted into evidence and published to the jury. The video contains footage of the events beginning with Cox's arrival at Appellant's home and ending with Cox in the ambulance before going to the hospital. During the video, the sound of glass shattering can be heard during the struggle with Appellant. When asked about the noise, Cox testified:

> A. Well, we were attempting to get Mr. Kennedy's hands in -- behind his back, attempting to get him to comply. He kept backing towards this – backing towards this, I guess, bench, because he was asking to sit down. Which, it being a felony warrant, we were attempting to get handcuffs on him in order to effectively make the arrest. While I was attempting to -- I had ahold of Kennedy. And while he was pulling towards the – the bench, I started to fall. And that was my hand going through the window.
> Q. Now, that fall, was that a result of him – his actions?
> A. Yeah, because -- since we were fighting with him, yes.
> Q. I mean, did you -- just walking around, did you slip and fall through that window?
> A. No.
> Q. If he was not fighting you, would you have fallen through that window?
> A. No.
> Q. If he had turned around, put his hands behind his back at the edge of the porch when you contacted him, would you have fallen through that window?
> A. No.

While Cox admitted that he could not say definitively whether he was actually pushed into the window, he stated that his hand went through the window only because Appellant struggled against him.

Deputy McClanahan's testimony supported Cox's version of the events. However, Deputy McClanahan testified that he did not see Cox's injury occur. He looked up and saw that Cox was bleeding severely after the glass broke. Deputies David Biggs and Jacob Brown, who were called to assist in serving the warrant, testified that they saw Appellant struggling with McClanahan and Cox. They also assisted in getting Appellant handcuffed, but they did not see Cox's injury occur.

5

Brittany Dahl, Appellant's fiancé, testified that Cox "tripped over the box and the bench and went through the window" when Appellant stood up to turn around to be handcuffed. Appellant also testified at trial to the following:

Q. Did you see what caused him to fall?
A. No, sir.
Q. Okay. Did you do anything to cause him to fall?
A. No, sir.
Q. Were you pulling on him?
A. No, sir.
Q. Well, you were sitting there on the bench; he was trying to grab your arm. You didn't pull him and cause him to go through the window?
A. No, sir.

He further testified that he believed Cox tripped over a box on the porch and fell into the window. Appellant stated that he neither pushed Cox through the window nor engaged in any other conduct that "caused him to be launched through" the window.

Accordingly, the jury heard evidence that Appellant struggled against Cox in an effort to avoid being handcuffed. The jury also heard that Cox's hand went through a window during the struggle. There is no dispute that Cox's hand was seriously injured as a result of shattering the window. Cox testified that his hand would not have shattered the window if not for Appellant's struggling against him. The jury also watched Cox's body camera video, which recorded the struggle. As the sole judge of the weight and credibility of the evidence, the jury was entitled to believe Cox's testimony and discredit Appellant's and Dahl's version of events. *See Brooks*, 323 S.W.3d at 899.

In doing so, and based on the evidence presented at trial, the jury could reasonably determine that Appellant was aware of the substantial and unjustifiable risk that struggling against Cox could lead to serious bodily injury and consciously disregarded that risk when he refused to comply with the officers' attempts to arrest him. *See* TEX. PENAL CODE ANN. § 6.03(c). Further, the jury could reasonably conclude that Cox's injury would not have occurred but for Appellant's conduct in resisting his arrest. *See id.* § 6.04; *State v. Marek*, Nos. 13-15-00381-CR, 13-15-00383-CR, 2016 WL 4578928, at *4 (Tex. App.—Corpus Christi Sept. 2, 2016, pet. ref'd); *see also Robbins*, 717 S.W.2d at 351. As a result, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Appellant committed aggravated assault on a public servant by recklessly causing serious bodily

injury to Cox, a person he knows is a public servant, while Cox was lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(1), (b)(2); *see also **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; ***Brooks***, 323 S.W.3d at 912. Because the evidence is sufficient to support the jury's verdict, we overrule Appellant's first issue.

## DENIAL OF MOTION FOR MISTRIAL

In his second issue, Appellant complains that the trial court abused its discretion when it denied his motion for mistrial. Specifically, he contends that witnesses' remarks that Appellant had been incarcerated destroyed his presumption of innocence and trial by an impartial jury.

### Standard of Review

A trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard. ***Ladd v. State***, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Mistrial is the appropriate remedy when error is so prejudicial that expenditure of further time and expense would be futile. ***Id***. It is a remedy intended for extreme circumstances, when prejudice is incurable and less drastic alternatives have been explored. ***Ocon v. State***, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).

### Analysis

At trial, Deputy McClanahan testified that there was a warrant for Appellant's arrest. When asked how the officers searched for Appellant to arrest him, McClanahan responded:

> A. What we did is we started to, kind of, research jail records and just different offenses that he had on his record and times that he had been in jail and people he had made contact with, and we found that he had –

At this point, Appellant's counsel interjected and asked to approach the bench. However, the trial court instructed the jury to disregard McClanahan's answer before an objection was made. Later in the trial, Detective McDonald testified, "In this case particularly, I went to the jail to speak with Mr. Kennedy and -- who I was told was…" Appellant's counsel again asked to approach the bench and the following bench conference ensued:

> APPELLANT'S COUNSEL: Your Honor, we would object to the officer's statements about going to the jail. It's being violative of the motion in limine.
> THE STATE: This interview, I don't believe, violates the motion in limine. He was in custody --
> THE COURT: I don't care if it violates the motion in limine. You don't ever have somebody say, "I went to the jail to talk to somebody." We're going through a lot of trouble to preserve the presumption of innocence. We've talked about it since Day One. And then your witness gets up

7

here and testifies, "I went to the jail to talk to him," which -- no.

THE STATE: Your Honor, it was after the arrest.

THE COURT: But that's not clear from the question and the answer.

THE STATE: I can clear it up, Your Honor.

THE COURT: No, don't revisit the jail. You can say, "This was immediately after his arrest," or something like that. But don't mention "jail." I don't want to hear "jail" out of another person's mouth.

THE STATE: I understand, Your Honor.

APPELLANT'S COUNSEL: Your Honor, could I get a ruling on my motion?

THE COURT: The Court sustains your objection.

APPELLANT'S COUNSEL: In light of the previous -- because of the highly prejudicial nature of the statements made, and in light of the previous statements made by the officer earlier this morning, we would respectfully move for mistrial.

THE COURT: You didn't ask for it, but I'm going to give them an instruction, anyway, and then I'll rule on your motion for mistrial.

(Open court.)

THE COURT: Ladies and gentlemen, please disregard Detective McDonald's last statement.

(At the bench, on the record.)

THE COURT: The Court overrules the motion for mistrial.

(End of bench conference.)

A defendant has a right to a presumption of innocence, and, as a general rule, disclosing to the jury that the defendant is incarcerated violates that right. *See Estelle v. Williams*, 425 U.S. 501, 503-04, 96 S. Ct. 1691, 1692-93, 48 L. Ed. 2d 126 (1976); *Randle v. State*, 826 S.W.2d 943, 944-45 (Tex. Crim. App. 1992); *Pierce v. State*, 234 S.W.3d 265, 268 (Tex. App.–Waco 2007, pet. ref'd). However, Texas courts have repeatedly held that testimony disclosing that a defendant is incarcerated can be cured by the less drastic remedy of an instruction to disregard. *See, e.g.*, *Hollaway v. State*, 446 S.W.3d 847, 855-56 (Tex. App.–Texarkana 2014, no pet.); *Pierce*, 234 S.W.3d at 268; *Sharper v. State*, 22 S.W.3d 557, 558-59 (Tex. App.–Texarkana 2000, no pet.); *Bledsoe v. State*, 21 S.W.3d 615, 624 (Tex. App.–Tyler 2000, no pet.); *see also Butler v. State*, No. 14-11-01001-CR, 2012 WL 4465210, at *2 (Tex. App.–Houston [14th Dist.] Sept. 27, 2012, no pet.) (mem. op., not designated for publication); *Hamilton v. State*, No. 14-08-00175-CR, 2010 WL 307884, at *2-3 (Tex. App.–Houston [14th Dist.] Jan. 28, 2010, no pet.) (mem. op., not designated for publication); *Madden v. State*, No. 2-08-007-CR, 2009 WL 2857269, at *3-4 (Tex. App.–Fort Worth Sept. 3, 2009, pet. ref'd) (mem. op., not designated for publication). Consistent with this precedent, the trial court here instructed the jury to disregard the question and response referring to Appellant's incarceration. And we presume the jury followed the trial court's instructions. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003). On this record, we cannot conclude that the trial court abused its discretion when it denied the motion for mistrial and instead opted for a less drastic alternative that would have cured any error. *See Ocon*, 284

S.W.3d at 887-88; *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000); *Hollaway*, 446 S.W.3d at 856; *Pierce*, 234 S.W.3d at 268; *Sharper*, 22 S.W.3d at 558-59; *Bledsoe*, 21 S.W.3d at 624; *see also Stivers v. State*, No. 02-14-00060-CR, 2016 WL 1600862, at *10-12 (Tex. App.–Fort Worth Apr. 21, 2016, pet. ref'd) (mem. op., not designated for publication); *Rice v. State*, No. 03-07-00446-CR, 2009 WL 790178, at *4-9, (Tex. App.–Austin Mar. 26, 2009, no pet.) (mem. op., not designated for publication). As a result, we overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered August 30, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 30, 2019**

**NO. 12-18-00216-CR**

**TYLER SHANE KENNEDY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0385-18)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*