**Reversed and Remanded and Majority and Dissenting Opinions filed August 10, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00086-CR

---

### VITAL GARCIA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 1533080**

---

## MAJORITY OPINION

Appellant Vital Garcia appeals his conviction for first degree aggravated assault on a family member resulting in serious bodily injury. A jury convicted appellant, and after he pleaded true to an enhancement allegation, the trial court assessed his punishment at 35 years in prison. In two issues, appellant contends that (1) the evidence was insufficient to establish that the complainant suffered serious bodily injury or that she was appellant's family member, and (2) the trial

court erred in refusing to submit a jury instruction on the lesser included offense of second degree aggravated assault. Concluding that the evidence was insufficient to support the jury's finding that complainant suffered serious bodily injury, we reverse the trial court's judgment and remand the case to the trial court with instructions to reform the judgment to reflect a conviction for the offense of second degree aggravated assault and to conduct a new hearing on punishment.

## *Background*

The complainant testified that she was in a dating relationship with appellant. She was 19 when they met, and appellant was "way older." She said that they were together "[n]o more than a year" and although the relationship was "somewhat" good at the beginning, "it wasn't such a great relationship." They lived in two consecutive apartments together, and when they moved to the second apartment, appellant became physically and verbally abusive.

Complainant said that appellant carried a .40 caliber gun with him "24/7" and threatened that if she cheated on him, he would kill her. On May 25, 2016, appellant left for work and complainant was alone in the apartment. She decided to call "Myrick" and ask him to come to the apartment. She described Myrick as her "weed guy" but acknowledged that they had once dated. Appellant came home from work early that day, while complainant and Myrick were smoking marijuana in the apartment. When appellant entered the apartment, he went straight to the bathroom, and complainant heard a gun being cocked. When appellant exited the bathroom, complainant tried to "get away" and moved toward the kitchen, but appellant shot her through her right thigh. Complainant remained standing after being shot. Appellant then fired shots at Myrick, who threw himself out of the balcony window. Appellant trapped complainant in the kitchen and shot her through her right breast.

2

Complainant grabbed her keys, phone, and wallet and went to her car, thinking that she could make it to the hospital. She said she did not call 911 because she was in shock. Appellant had also left the apartment, and complainant could hear more gunshots outside. Complainant drove about a block away when she saw police officers and asked them for help. She was bleeding and no longer thought she would make it to the hospital. She said that after she got into the ambulance, she "went out" and did not remember anything after that until she got to the hospital. She did not have to have surgery but said she still had scars on both her breast and her leg. After being shot, she thought she was going to die.

A security guard working for the apartment complex testified that on that day, he saw appellant enter his apartment and then heard multiple gunshots and a woman scream. Appellant then ran down the staircase. The guard chased appellant but eventually lost sight of him. Appellant later returned to the apartment complex during the investigation, was arrested, and showed officers where he had thrown his gun near a fence. One officer testified that Myrick had to be carried from the scene by EMS, and he was bleeding "from multiple areas on his body." Appellant told officers that he thought the people he shot were trying to steal his property. One of the officers testified, however, that the apartment looked "pretty bare," there was no sign of forced entry, and he could not tell if someone had tried to take any property.

Dr. Jordan Smith testified that he is the emergency physician who treated complainant when she arrived at the hospital. She suffered two gunshot wounds— one bullet passed through her right breast and the other went through her right thigh. Smith performed a thorough examination of complainant, including using ultrasound and radiology imaging to make sure that she did not have any damage to major organs, a collapsed lung, or rib or femur fractures. He also washed the

3

wounds and closed them with staples. He stated that there were four wounds that had to be closed.

Smith also testified that a gunshot wound can cause serious bodily injury and even death, and based on the location of complainant's wounds, he believes she sustained serious bodily injury. He described several vital organs in the area of the wounds that if hit, could have led to complainant's death. On cross-examination, Smith acknowledged that none of complainant's vital organs appeared to have been hit by the bullets and that she was only at the hospital for less than three and a half hours before being discharged. On re-direct, Smith said that complainant was instructed to have the staples removed in ten days and that the procedure typically leaves scarring. Smith was not asked about and did not discuss whether complainant's injuries, if left untreated, could have created a substantial risk of death or caused death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

Photographs taken of the crime scene and introduced into evidence showed signs of blood in the apartment, but it is impossible to tell from the photographs how much blood complainant lost. An EMS report admitted into evidence states that complainant was alert and conscious at the scene and her condition did not change during transport.

Complainant's medical records, which were also admitted as evidence, showed that she was shot at close range with a handgun. Although the records show that appellant was in pain, they reveal no other form of distress. The laceration on the top of her right breast was 1.5 centimeters long and the laceration on the bottom of her breast was 3 centimeters long. The laceration on the top of her right leg was 4 centimeters, and the laceration on the side of the leg was 2 centimeters. The lacerations were described as "simple" and "deep," and fragments

4

of the bullet that entered her leg remained in the leg after treatment. Upon her release after less than three and a half hours, complainant was said to be stable and without complications. Appellant did not present any witnesses and did not testify himself.

## *Sufficiency of the Evidence*

**Governing Law.** In his first argument under his first issue, appellant contends that the evidence was insufficient to prove that complainant suffered serious bodily injury as a result of appellant shooting her. In assessing the sufficiency of the evidence to support a conviction, we must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational trier of fact could have found the challenged element or elements of the crime beyond a reasonable doubt. *See Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In reviewing historical facts that support conflicting inferences, we presume that the jury resolved any conflicts in the State's favor and defer to that resolution. *Whatley*, 445 S.W.3d at 166. We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). As judge of the credibility of the witnesses, a jury may choose to believe all, some, or none of the testimony presented. *Cain v. State*, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).

The elements of the offense of first-degree aggravated assault on a family member require evidence that the actor used a deadly weapon during the commission of an assault and caused serious bodily injury. *See* Tex. Penal Code § 22.02(b)(1); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). The Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of

5

physical condition" and "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code § 1.07(a)(8), (46). Whether an injury constitutes serious bodily injury is determined on a case-by-case basis. *Miller v. State*, 312 S.W.3d 209, 213 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *Moore v. State*, 739 S.W.2d 347, 349 (Tex. Crim. App. 1987)). The relevant inquiry is the degree of risk posed and the disfiguring and impairing quality of the injury as inflicted, not after the effects have been ameliorated or exacerbated by medical treatment. *See Blea*, 483 S.W.3d at 34-35. Serious bodily injury may be established without a physician's testimony when the injury and its effects are obvious. *Id*. at 35.

**Analysis.** Here, the State failed to present evidence demonstrating that appellant caused complainant to suffer "serious bodily injury," i.e., that the injuries she sustained created "a substantial risk of death" or caused "death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code § 1.07(a)(46).

The evidence established that appellant shot complainant twice with a .40 caliber handgun. This was undoubtedly a traumatic experience for complainant and one that caused her bodily injury; however, a gunshot wound is not per se serious bodily injury. *Williams v. State*, 696 S.W.2d 896, 898 (Tex. Crim. App. 1985). The State was required to present specific evidence regarding the nature of the injuries inflicted. *See id*. ("The shooting of an individual is a serious and grave matter. Yet, it is the burden of the State to prove that such an act created a substantial risk of death, or caused death, a serious permanent disfigurement, or protracted loss or impairment of the functions of any bodily member or organ.").

Evidence showed that the two bullets passed through complainant's right

6

thigh and right breast, but there was no evidence that they hit any vital organs or caused any serious or lasting impairment or disfigurement. The shots did not knock appellant down, and she was immediately able to gather her things, walk to her car, and drive away. Complainant drove for about a block before happening upon police officers. She said that at first, she thought she could make it to the hospital on her own but then changed her mind. She was bleeding but there is little evidence to indicate how much blood she lost. There is no indication in the medical records that she received a blood transfusion. Complainant stated that she thought she was in shock and that she "went out" once she got into the ambulance, but the EMS records reflect that she was alert and conscious at the scene and her condition did not change during transport. Complainant further said that at one point, she thought she was going to die. *See generally Hart v. State*, 581 S.W.2d 675, 677 (Tex. Crim. App. 1979) (panel op.) (explaining that a complainant is qualified to express an opinion regarding the seriousness of her injuries). But she was not asked to and did not explain the basis for that feeling, whether it was just a fear or whether it was an assessment of her physical condition.

Complainant also mentioned that she had scars from the wounds, but she did not describe the scars and the scars were not shown to the jury either in person or in photographs. The simple fact that some scarring occurred is not alone sufficient to support a finding of serious bodily injury. *See, e.g., Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2012, pet. ref'd); *see also Wade v. State*, 594 S.W.3d 804, 811 (Tex. App.—Austin 2020, pet. granted) ("Rather, '[t]here must be evidence of some significant cosmetic deformity caused by the injury.'") (quoting *Hernandez v. State*, 946 S.W.2d 108, 113 (Tex. App.—El Paso 1997, no pet.)). Complainant did not mention any loss or impairment of the function of any bodily member or organ.

7

Smith, complainant's treating physician, stated that he thought her wounds constituted serious bodily injury, but he was not asked about and expressed no opinion regarding the statutory criteria for serious bodily injury. Smith was asked about and discussed the fact that the bullet wounds were close to several vital organs, and he opined that had those organs been hit, complainant could have died. But there was no evidence that any of complainant's vital organs were hit or otherwise impacted by the bullets. Indeed, Smith performed tests and was satisfied that no vital organs were impacted. Smith was not asked and did not indicate what would or could have happened with complainant's wounds had she not received medical care.

The treatment complainant received at the hospital was relatively brief and nonintrusive. Medical records showed that she was at the hospital for three hours and twenty minutes. Smith described her wounds as "simple" and "deep," and he cleaned them and closed them with twelve staples. Although fragments of the bullet that entered complainant's leg remained in the leg after treatment, there was no evidence that this condition would or could cause any complications. Complainant was released from the hospital with a prescription for pain medication and instructions to have the staples removed in ten days. There was no evidence of any restrictions placed on complainant due to her wounds, much less the loss of any use or function of any bodily member or organ. Complainant was recorded as being "ambulatory" at the scene and when she left the hospital.

In short, there was insufficient evidence to support the jury's finding that complainant's injuries created "a substantial risk of death" or caused "death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code § 1.07(a)(46); *see also Williams*, 696 S.W.2d at 897-98 (holding evidence was insufficient to prove bullet wound

8

constituted serious bodily injury where no testimony was offered suggesting the complainant suffered either a substantial risk of death or a serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ); *Black v. State*, 637 S.W.2d 923, 926 (Tex. Crim. App. 1982) (holding evidence was insufficient to prove bullet wound caused serious bodily injury where although complainant was in the hospital for three days and took two to three months to heal, there was no evidence of the severity of the wound or any permanent damage); *Hollaway v. State*, 446 S.W.3d 847, 852 (Tex. App.—Texarkana 2014, no pet.) (holding evidence was insufficient to support finding that abdominal stab wound was serious bodily injury where the complainant was not shown to have suffered either internal injuries or complications even though paramedic testified that the injury was a very serious type of injury).

Accordingly, the evidence was insufficient to support appellant's conviction for aggravated assault on a family member resulting in serious bodily injury. We therefore sustain appellant's first issue.

### *Disposition*

Having determined that the evidence was legally insufficient to support appellant's conviction for first degree aggravated assault on a family member resulting in serious bodily injury under Texas Penal Code section 22.02(b)(1), we must now consider whether the conviction should be reformed to convict appellant of the lesser-included offense of second degree aggravated assault under section 22.02(a)(2). *See Canida v. State*, 434 S.W.3d 163, 166 (Tex. Crim. App. 2014).

When an appellate court determines the evidence is insufficient to support a conviction for a greater-inclusive offense, the court must consider the following two questions when deciding whether to reform the judgment to reflect a conviction for a lesser-included offense: (1) in the course of convicting the

appellant of the greater offense, did the jury find every element necessary to convict the appellant for the lesser-included offense? and (2) does the evidence support a conviction for the lesser-included offense? *Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014). If the answer to both questions is yes, the court is required to reform the judgment to reflect a conviction for the lesser-included offense. *Id*. at 300.

As relevant to this case, a person commits the offense of aggravated assault if the person commits assault causing bodily injury and uses or exhibits a deadly weapon during the commission of the assault. *See* Tex. Penal Code § 22.02(a)(2). The offense is generally punishable as a second-degree felony. *Id*. § 22.02(b). The parties agree that, under the circumstances of this case, aggravated assault is a lesser included offense of aggravated assault on a family member resulting in serious bodily injury. The two offenses required proof of the same elements with the greater offense additionally requiring proof of serious bodily injury and that the complainant was a family member, i.e., in this case, in a dating relationship with the accused. *Compare id*. § 22.02(a)(2), *with id*. § 22.02(b)(1).

In his briefing, appellant only challenges the sufficiency of the evidence as to the elements of serious bodily injury and that complainant was a family member of appellant. Appellant does not contest that the evidence demonstrated he assaulted complainant causing bodily injury and used a deadly weapon during the commission of the assault. *See id*. § 22.02(a)(2). Indeed, as discussed above, the evidence showed appellant shot complainant twice, with the bullets passing through her thigh and breast. A firearm is a deadly weapon per se. *See id*. § 1.07(a)(17)(A) (defining "deadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury"). Accordingly, we conclude that the evidence and the jury's findings are

sufficient to support a conviction under the lesser-included offense of second-degree aggravated assault.[1]

## *Conclusion*

Because we conclude that the evidence was insufficient to support the jury's finding that complainant suffered serious bodily injury but sufficient to support a finding on the elements of aggravated assault, we reverse the trial court's judgment and remand the case to the trial court with instructions to reform the judgment to reflect a conviction for the offense of second degree aggravated assault and to conduct a new hearing on punishment.


/s/     Frances Bourliot
        Justice


Panel consists of Justices Bourliot, Hassan, and Poissant. (Poissant, J., dissenting).
Publish — TEX. R. APP. P. 47.2(b).

---

[1] Because of our resolution of appellant's first argument under his first issue, we need not address appellant's second argument under his first issue—asserting the evidence was insufficient to support the finding that complainant was a family member of appellant— or his second issue—asserting appellant was entitled to a jury instruction on the lesser included offense of second degree aggravated assault. Specifically, concerning the second issue, since we are required under *Thornton* to order the judgment reformed to reflect a conviction for aggravated assault, there would be no point in determining whether appellant was entitled to a jury instruction on aggravated assault as a lesser-included offense of aggravated assault on a family member resulting in serious bodily injury. 425 S.W.3d at 300.